United States District Court
Southern District of Texas
**ENTERED**
May 14, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA, §
§
Plaintiff, §
§
v. § CRIMINAL NUMBER H-17-290-01&03
§
HARCHARAN SINGH NARANG and §
DAYAKAR MOPARTY, §
§
Defendants. §

## MEMORANDUM OPINION AND ORDER

In May of 2017 an Indictment was returned charging Dr. Harcharan Singh Narang ("Dr. Narang"), Dayakar Moparty ("Moparty") (collectively, "Defendants"), and Dr. Gurnaib Singh Sidhu ("Dr. Sidhu") with health care fraud and related charges arising out of a conspiracy that began in 2012.[1] Dr. Sidhu pled guilty to Conspiracy to Commit Healthcare Fraud in violation of 18 U.S.C. § 1349 pursuant to a plea agreement with the government.[2] The charges against Dr. Narang and Moparty were tried to a jury.[3] After the government rested, Defendants moved for a mistrial.[4] The

---

[1] See Indictment, Docket Entry No. 1, pp. 1, 5.

[2] See Plea Agreement, Docket Entry No. 99, p. 1 [SEALED].

[3] See Minute Entry [First Day of Jury Trial], Docket Entry No. 152.

[4] See Trial Transcript [Day 6 of 8], Docket Entry No. 230, p. 220 ln. 16-20.

court reserved a ruling on the motion until it had been fully briefed by the parties.[5] At the conclusion of an eight-day jury trial both Defendants were convicted of all 21 counts in the Indictment.[6] Pending before the court is Defendants' Motion for Mistrial with Memorandum in Support ("Defendants' Motion"), Docket Entry No. 179.

Defendants argue two bases for mistrial. First, Defendants argue that the government improperly referred to Dr. Sidhu's guilty plea in the presence of the jury without calling Dr. Sidhu as a witness. Second, Defendants argue two points of error in the testimony of one of the government's expert witnesses, Dr. Peter Grant ("Dr. Grant"). Defendants contend that the government misled the defense about Dr. Grant's prior experience as an expert witness and that Dr. Grant offered inadmissible evidence to the jury during his testimony. For the reasons explained below, Defendants' right to a fair trial was not compromised by any of the alleged errors, and Defendants' Motion will be denied.

## I. Introduction of Dr. Sidhu's Guilty Plea

Defendants argue that the government improperly introduced Dr. Sidhu's guilty plea to the jury on two occasions. First, during its opening argument the government stated that Dr. Sidhu

---

[5]See id. at 220 ln. 20-21.

[6]See Verdict [as to Dr. Narang], Docket Entry No. 167; Verdict [as to Moparty], Docket Entry No. 168.

"is a co-conspirator in this case" but that "Dr. Sidhu is not in this trial because he has already pled guilty."[7] Defendants did not object to this statement.

Second, Defendants argue that the government elicited the following improper testimony from Kevin Lammons, an FBI Agent who oversaw the investigation into Defendants:

> Q. Okay. And we haven't talked a lot about Dr. Sidhu yet. We've heard that he was working with Dr. Narang but haven't seen him in this trial. Why is that?
>
> A. He's already pled guilty.[8]

Counsel for both Defendants objected to Agent Lammons' testimony as improper under Federal Rule of Evidence 403 and in violation of the confrontation clause, and asked the court for a limiting instruction requiring the jury to disregard the testimony.[9] The court responded by immediately providing a limiting instruction requiring the jury not to consider Dr. Sidhu's guilty plea as evidence.[10] The court rejected Defendants' confrontation clause challenge because Defendants had the ability to subpoena Dr. Sidhu in the event the government did not call him as a witness.[11]

---

[7]See Trial Transcript [Day 1 of 8], Docket Entry No. 219, p. 66 ln. 22-24.

[8]See Trial Transcript [Day 6 of 8], Docket Entry No. 230, p. 83 ln. 13-16.

[9]See id. ln. 17-23.

[10]See id. at 83 ln. 24 - 84 ln. 9.

[11]See id. at 84 ln. 16-22.

"Defendants are entitled to have questions of guilt based on the evidence against them, 'not on whether a government witness or a codefendant has plead guilty to the same charge." United States v. Delgado, 401 F.3d 290, 299 (5th Cir. 2005) (citing United States v. Black, 685 F.2d 132, 135 (5th Cir. 1982)). In reviewing the propriety of the government's introduction of a codefendant's guilty plea, the court considers the factors articulated by the Fifth Circuit in United States v. King, 505 F.2d 602 (5th Cir. 1974): (1) the presence or absence of a limiting instruction; (2) whether there was a proper evidentiary purpose for introduction of the guilty plea; (3) whether the plea was improperly emphasized or used as substantive evidence of guilt; and (4) whether the introduction of the plea was invited by defense counsel. Id. at 608; United States v. Murray, 988 F.2d 518, 523 (5th Cir. 1993).

The government does not contest that counsel for Defendants did not invite the government's introduction of Dr. Sidhu's plea. The court must therefore apply the remaining three King factors to determine whether the government's introduction of Dr. Sidhu's plea is reversible error.

A. Limiting Instruction

When Defendants objected to Agent Lammons' testimony the court immediately complied with Defendants' request to issue a limiting instruction requiring the jury not to consider Dr. Sidhu's plea as evidence of Defendants' guilt:

> Dr. Sidhu is not here. He did plead guilty. The fact
> that he's guilty is not evidence that any other person is
> guilty of any wrongdoing. His case was considered
> separately, and you're not to draw any adverse inference
> from the fact that Dr. Sidhu may believe he is guilty.
> It's not relevant to this case. These defendants are
> presumed to be innocent. The fact that somebody else may
> be guilty does not in any way affect the presumption of
> innocence that cloaks them and remains with them until
> such time, if ever, that the government can prove these
> defendants guilty of anything.[12]

The court also requested that the parties submit an agreed instruction for the court to give the jurors at the conclusion of the evidence. The court charged the jury with the parties' agreed instruction:

> You have heard that Dr. Sidhu pled guilty to a crime. Do
> not consider his plea as any evidence of guilt. It is
> not. Dr. Sidhu's decision to plead guilty was a personal
> decision. Disregard Dr. Sidhu's guilty plea completely
> when considering DR. NARANG or DAYAKAR MOPARTY's guilt or
> innocence. As I instructed you during the trial,
> Dr. Sidhu's guilty plea is not to be considered by you in
> any way as you decide whether the government has met its
> burden to prove beyond a reasonable doubt that DR. NARANG
> or DAYAKAR MOPARTY committed the crimes alleged in the
> indictment.[13]

The Fifth Circuit has recognized the "almost invariable assumption" that jurors follow limiting instructions. United States v. Ramos-Cardenas, 524 F.3d 600, 611 (5th Cir. 2008) (internal quotations omitted). The court firmly instructed the jury to completely disregard Dr. Sidhu's plea both (1) when Defendants objected during trial and (2) at the conclusion of trial when the

---

[12]See id. at 83 ln. 24 - 84 ln. 9.

[13]See Court's Instructions to the Jury, Docket Entry No. 166, p. 11.

court instructed and charged the jury. These two forceful limiting instructions undermine Defendants' argument that the introduction of Dr. Sidhu's guilty plea compromised their right to a fair trial and weigh against granting Defendants' Motion.

## B.  Use as Substantive Evidence

Defendants argue that the government's introduction of Dr. Sidhu's guilty plea was "clearly meant to be used as substantive evidence of guilt."[14]  "[E]vidence about the conviction of a coconspirator is not admissible as substantive proof of the guilt of a defendant." United States v. Leach, 918 F.2d 464, 467 (5th Cir. 1990). It is undisputed that Defendants are entitled to have the question of their guilt determined based on the government's evidence against them and not by the fact that Dr. Sidhu pled guilty. Dr. Sidhu's plea was mentioned only twice during an eight-day trial:  first by the government during its opening statement and second by Agent Lammons during his direct examination by the government. The government did not improperly emphasize Dr. Sidhu's guilty plea or attempt to lead the jury to draw any improper inference from it. Both references to Dr. Sidhu's plea were in the context of explaining why Dr. Sidhu, who played a central role in the scheme alleged by the government and who was charged in the same indictment as Defendants, was not present at trial.

---

[14]See Defendants' Motion, Docket Entry No. 179, p. 1.

Dr. Sidhu's guilty plea was not admitted as substantive evidence: The statement made by the government during its opening statement is not evidence, and the jury was instructed as such before opening statements began.[15] After Agent Lammons testified that Dr. Sidhu pled guilty, the court instructed the jury that Dr. Sidhu's plea "is not evidence that any other person is guilty of any wrongdoing."[16] The fact that evidence of Dr. Sidhu's guilty plea was neither improperly emphasized by the government nor considered by the jury as substantive evidence of Defendants' guilt weighs against any argument that Defendants' right to a fair trial was compromised.

C. Legitimate Purpose

Defendants argue that there was no proper evidentiary purpose for the government's introduction of Dr. Sidhu's guilty plea. The government points to two allegedly legitimate purposes for introducing Dr. Sidhu's plea: (1) to counter Defendants' efforts to paint Dr. Sidhu as the mastermind of the scheme; and (2) to counteract anticipated impeachment efforts by defense counsel when (and if) Dr. Sidhu was called as a witness.[17]

---

[15]See Trial Transcript [Day 1 of 8], Docket Entry No. 219, p. 62 ln. 3-6 ("In just a moment the lawyers will make an opening statement. An opening statement is a preview of what the lawyers believe the evidence will be and how you should evaluate the evidence. It is not evidence.").

[16]See Trial Transcript [Day 6 of 8], Docket Entry No. 230, p. 83 ln. 25 - 84 ln. 1.

[17]See Government's Response to Defendants' Motion for Mistrial ("Government's Response"), Docket Entry No. 188, pp. 4-6.

A proper purpose exists for introducing the guilty plea of a codefendant "when the record reflects a defensive strategy to emphasize or rely on a co-conspirator's guilt." United States v. Valley, 928 F.2d 130, 133 (5th Cir. 1991). "A defense strategy that itself heavily relies on the guilty pleas with 'frequent, pointed, and direct references,' defeats subsequent attempts to claim error in the government's use of the pleas." United States v. Setser, 568 F.3d 482, 494 (5th Cir. 2009) (citing Leach, 918 F.2d at 467). Defendants did not comment on Dr. Sidhu's conviction, and the fact that Dr. Sidhu pled guilty for one of the offenses of which Defendants were charged was not a part of Defendants' trial strategy. See Leach, 918 F.2d at 468 (citing cases where courts have allowed introduction of evidence of a coconspirator's conviction for the same offense when defense strategy relies "substantially on the fact of the conviction"). Because Defendants' trial strategy did not rely on Dr. Sidhu's plea, there was no legitimate purpose for the government to introduce Dr. Sidhu's plea merely to counter Defendants' portrayal of Dr. Sidhu as the mastermind of the scheme.

A legitimate purpose for introducing a codefendant's guilty plea also exists when the government preemptively introduces the plea to counter defense counsel's later attempts to use the guilty plea for impeachment purposes. See United States v. Borchardt, 698 F.2d 697, 701 (5th Cir. 1983). "[C]ounsel presenting witnesses of blemished reputation routinely bring out 'such adverse facts as

they know will be developed on cross-examination' in order to avoid even the appearance of an 'intent to conceal.'" Valley, 928 F.2d at 133. It is therefore permissible to "'blunt the sword' of anticipated impeachment by revealing the information first." United States v. Marroquin, 885 F.2d 1240, 1246 (5th Cir. 1989). The government argues that it introduced Dr. Sidhu's guilty plea during opening statements to counteract defense counsel's later attempts to impeach Dr. Sidhu, who the government planned to call as a witness. The government claims it did not ultimately call Dr. Sidhu as a witness because the testimony of other witnesses "established through overwhelming evidence that (a) Sidhu was far from the mastermind Defendants tried to depict, and (b) that Defendants were guilty of the crimes charged."[18]

There is no evidence that the government did not intend to call Dr. Sidhu as a witness: The government and Defendants deposed Dr. Sidhu, who is of failing health, to ensure that his testimony would be preserved for trial.[19] The statements made by the government during its opening statement therefore arguably had a legitimate purpose: to anticipate and preemptively counter defense counsel's efforts to impeach Dr. Sidhu with his guilty conviction during his eventual cross-examination.[20] The same is not true for

---

[18] See Government's Response, Docket Entry No. 188, p. 7.

[19] See Order, Docket Entry No. 96 (granting the government's motion to depose Dr. Sidhu).

[20] Defendants cite United States v. Eason, 920 F.2d 731 (11th Cir. 1990), for the proposition that "a conviction other than that
(continued...)

the statement made by Agent Lammons: Agent Lammons' testimony was provided near the conclusion of the government's case-in-chief, and the government likely knew at that point that it no longer planned to call Dr. Sidhu as a witness.

The court concludes that there is no indication that either of the challenged statements were made in bad faith. While the government arguably had a legitimate purpose for referencing Dr. Sidhu's plea in its opening statement, the government can point to no proper purpose for Agent Lammons' testimony. The dubious purpose of at least one of the challenged statements weighs slightly in favor of granting Defendants' Motion.

D. Harmless Error

Although the reference by Agent Lammons to Dr. Sidhu's guilty plea was improper, any error on the government's part was harmless beyond a reasonable doubt. Dr. Sidhu's guilty plea was never admitted or considered by the jury as substantive evidence. The court gave two separate limiting instructions -- one at Defendants' first objection to the introduction of Dr. Sidhu's plea, and another before the jury was charged in the court's instructions to

---

[20](...continued)
of the witness himself is not admissible on the issue of the witness's credibility." Id. at 735. Eason is distinguishable because the codefendant whose plea was introduced in Eason was not a witness. Id. Here, Dr. Sidhu was one of the government's potential witnesses and the government could permissibly introduce evidence of his plea to anticipate defense counsel's later efforts to use his guilty plea to call his credibility into question.

-10-

the jury -- requiring the jury not to consider Dr. Sidhu's plea as evidence. The references to Dr. Sidhu's guilty plea may be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Arizona v. Fulminante, 111 S. Ct. 246, 1264 (1991). The admissible evidence presented to the jury "overwhelmingly eclipses the two [brief] mentions of Sidhu's plea."[21] Defendants Motion for Mistrial on this basis will therefore be denied.

---

[21]See Government's Response, Docket Entry No. 188, pp. 10-11. The government also cites a nonexclusive list of the evidence it presented at trial that was sufficient for the jury to find Defendants guilty beyond a reasonable doubt:

> (1) lead medical assistant Kesha Burton's testimony that she was instructed by Narang and his wife to falsify documents, she was coached by Narang on how to deceive weight-loss patients into submitting to unnecessary tests, and she attended a meeting with Moparty where the staff was coached on how not to get caught for fraud; (2) Edna Lemke's recording where Narang states that he and Moparty have a deal that none of Narang's patients will be charged any of the cost-sharing required by insurance companies; (3) Moparty accountant Keon Warren's testimony that he personally informed Narang that they could not re-submit claims through multiple entities, and that Moparty instructed Warren to do it anyway and "see what happens"; (4) testimony from three insurance representatives that the prohibitions on Narang and Moparty's schemes were "Insurance 101," and that Narang and Moparty's contracts plainly prohibited their fraudulent practices; (5) the testimony of five credible women that they had never been treated by Sidhu, the physician on their paperwork and claims data; and (6) a cover-up paper trail including bogus real estate and consulting agreements, shell companies with straw owners, and movement of monies entirely inconsistent with the cover-up agreements.

See id. at 11.

## II. Objections to Dr. Grant's Testimony

Defendants argue that the government also engaged in misconduct in connection with Dr. Grant's testimony. First, Defendants argue that the government misrepresented the extent of Dr. Grant's testifying experience, resulting in Defendants' inability to review transcripts of his prior expert testimony and adequately prepare for his cross-examination.[22] Defendants base this argument on a mistake in an e-mail exchange between counsel in which the government's counsel represented that Dr. Grant had not previously testified as an expert.[23] At that time, however, Defendants were already in possession of Dr. Grant's expert report, which stated that he had previously testified for the government in other healthcare fraud cases.[24] The government also argues, and the court agrees, that Defendants were not prejudiced by any lack of knowledge of Dr. Grant's prior expert testimony because neither Dr. Grant nor the government was in possession of any transcripts of Dr. Grant's testimony.[25] See Fed. R. Crim. P. 26.2(a) (requiring the government to produce only the witness statements that are (1) in the government's possession and (2) related to the subject

---

[22]See Defendants' Motion, Docket Entry No. 179, pp. 5-6.

[23]See Government's Response, Docket Entry No. 188, pp. 11-12.

[24]See id.; Expert Report of Peter A. Grant, M.D., Exhibit C to Government's Response, Docket Entry No. 188-3, p. 3.

[25]See Trial Transcript [Day 4 of 8], Docket Entry No. 225, p. 191 ln. 1-3.

matter of the witness's testimony). Any error by the government in the e-mail exchange with defense counsel is harmless, and Defendants were not unfairly prejudiced.

Second, Defendants argue that Dr. Grant improperly offered testimony that he "Googled" Dr. Narang's specialists and that one had been convicted of a healthcare fraud in a different action.[26] At trial, Dr. Grant was asked to address the qualifications of both the technicians performing certain tests at Dr. Narang's office and the specialists to whom the test results were sent for their evaluation. The government asked Dr. Grant whether he had looked into "who these doctors were that were supervising [Dr. Narang's technicians] and where [they were] located?"[27] Dr. Grant responded:

> Right. Yeah. There were three physicians that were supposedly supervising. They were the ones that were interpreting [the test results]. But, again, none of them were [located at Dr. Narang's office]. The Dr. de Jesus, she is a neurologist in Fort Worth. Dr. Ahmed, as I Googled his name, I found that he's a convicted felon for health care fraud in January of 2017.[28]

Defendants promptly objected to this testimony, and the court instructed the jury to disregard the fact of Dr. Ahmed's conviction and that there was no evidence that Dr. Narang or Mr. Moparty knew of the conviction.[29]

---

[26]See Motion for Mistrial, Docket Entry No. 179, p. 6.

[27]See Trial Transcript [Day 4 of 8], Docket Entry No. 225, p. 166 ln. 9-10.

[28]See id. ln. 11-16.

[29]See id. at 166 ln. 18 - 167 ln. 24.

The court is not persuaded that Dr. Grant's statement was proper impeachment evidence, or that Dr. Grant's statement had any proper evidentiary purpose. However, this error is harmless. When an individual has been convicted of a healthcare fraud conspiracy unrelated to the healthcare fraud conspiracy with which a defendant is currently charged,

> [t]he jury does not learn that the government had a conspiracy case so strong that one of the accused pleaded guilty. Moreover, it cannot infer from this information anything prejudicial to the defense. The jury could infer from the plea to an earlier conspiracy only that the [individual] was the type of person who would conspire illegally if given the chance. Such an inference is not prejudicial to the defense.

United States v. Medina-Arellano, 569 F.2d 349, 356 (5th Cir. 1978). The court gave the jury firm limiting instructions both to "disregard the fact that Dr. Ahmed had a conviction" and that "there's no evidence Dr. Narang knew of the conviction."[30] Courts recognize the "almost invariable assumption" that jurors follow such instructions. Ramos-Cardenas, 524 F.3d at 611 (quoting Richardson v. Marsh, 107 S. Ct. 1702, 1707 (1987)). The court concludes that any error by the government in conjunction with Dr. Grant's testimony is harmless, and Defendants' Motion on this basis will be denied.

### III. Conclusion

To the extent that the government's introduction of Dr. Sidhu's guilty plea and the government's alleged misconduct

---

[30] See id. at 167 ln. 12-13, 19-20.

-14-

relating to Dr. Grant's testimony were in error, any such error is harmless. Defendants' right to a fair trial was not compromised by any of the alleged misconduct. Defendants' Motion for Mistrial (Docket Entry No. 179) is therefore **DENIED**.

**SIGNED** at Houston, Texas, on this the 14th day of May, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE